**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 15-05204 MMM (FFMx) | Date | August 17, 2015 |

| | |
|---|---|
| Title | *James Murtagh, M.D. v. David Pardo, et al.* |

Present: The Honorable   MARGARET M. MORROW

| ANEL HUERTA | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**   **Order Denying *Ex Parte* Application for Temporary Restraining Order**

## I. BACKGROUND

On July 10, 2015 James Murtagh, M.D. filed this action against David Pardo, Automattic, Inc. d/b/a ("WordPress"), MarkMonitor, Inc. ("MarkMonitor"), and various fictitious defendants (collectively, "defendants").[1]  On August 14, 2015, Murtagh filed an *ex parte* application for temporary restraining order.[2] Also on August 14, 2015, Murtagh filed notice dismissing all claims against Automattic and MarkMonitor.[3]

Murtagh alleges that he is an accomplished medical doctor and public health advocate certified in internal, pulmonary, and sleep medicine and licensed to practice in twelve states.[4]  Pardo and another man, Clark Baker, allegedly created the website *<jamesmurtaghmd.com>* in November

---

[1]Complaint, Docket No. 2 (July 10, 2015).

[2]*Ex Parte* Application ("Application"), Docket No. 16 (Aug. 14, 2015).

[3]Notice of Dismissal as to Automattic, Inc*., Docket No. 17 (Aug. 14, 2015); Notice of Dismissal as to MarkMonitor, Inc. (Aug. 14, 2015).

[4]Complaint, ¶ 7.

2012 without authorization from Murtagh.[5]  The website disparaged Murtagh's medical practice.[6]  In response, Murtagh filed a complaint for mandatory arbitration of his right to the domain name and for transfer of the domain name on May 1, 2014.[7]  The complaint alleges that this procedure is required by the Internet Corporation for Assigned Names and Numbers ("ICANN") – the primary management mechanism for the global internet and domain name system.[8]  An ICANN  Uniform Domain Name Dispute Resolution Policy ("UDNDRP") arbitration panel found that Murtagh had ownership of and trademark rights in *<jamesmurtaghmd.com>*.  The domain name was therefore transferred to Murtagh.[9]

Since then, the website was allegedly republished by Pardo at *<jamesmurtaghmd.wordpress.com>*.[10]  Murtagh alleges that the domain's listed registrar is MarkMonitor, while WordPress is the listed registrant of the website *<jamesmurtaghmd.wordpress.com>*.[11]  WordPress – which is deemed to be the owner under ICANN rules – allegedly refused to take down and/or transfer the website, contending that Murtagh's recourse was to file another complaint under ICANN's UDNDRP.[12]  Murtagh contends this is not required.  Rather, he asserts, substantially similar domain names are protected under the Lanham Act.[13]  He therefore filed this action alleging claims for trademark infringement and false designation of origin, 15 U.S.C. §§ 1114(1) & 1125(a)(1)(A), as well as for cyberpiracy, 15 U.S.C. § 1125(d).

Murtagh bases his application for a temporary restraining order solely on his trademark infringement claim under § 1114(1) of the Lanham Act.  He seeks a temporary restraining order "disabling the unauthorized domain name *<jamesmurtaghmd.wordpress.com>* and a preliminary

---

[5]*Id.*, ¶ 9

[6]*Id.*

[7]*Id.*, ¶ 42.

[8]*Id.*, ¶¶ 40-41.

[9]*Id.*, ¶ 43.  Baker's organization, the Office of Medical and Scientific Justice, appealed the decision; it voluntarily dismissed the appeal, however.  See *Office of Medical and Scientific Justice, Inc. v. James Murtagh, M.D.*, Case No. CV 14-05538-GW-PLA.

[10]Complaint, ¶ 50.

[11]*Id.*, ¶¶ 51-54.

[12]*Id.*, ¶ 57.

[13]*Id.*, ¶ 58.

injunction ordering the transfer of rights to plaintiff of that account and domain name."[14]  He asserts that defendants' use of the  *<jamesmurtaghmd.wordpress.com>*  domain name is likely to cause confusion among Murtagh's patients.[15]

## II.  DISCUSSION

### A.  Legal Standard Governing Issuance of Temporary Restraining Orders

The standard for issuing a temporary restraining order ("TRO") is the same as that for issuing a preliminary injunction.  *Stuhlbarg Int'l Sales Co. v. John D. Brushy & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001); *Ali v. United States*, 932 F.Supp. 1206, 1208 (N.D. Cal. 1996).  A "preliminary injunction is an extraordinary and drastic remedy," *Munaf v. Geren*, 553 U.S. 674, 676 (2008), and a district court should grant preliminary injunctive relief only "upon a clear showing that the plaintiff is entitled to such relief," *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008).  Such a showing requires that plaintiff establish he is "likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter*, 555 U.S. at 20.  See *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009) ("Under *Winter*, plaintiffs seeking a preliminary injunction must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest.").  See also *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) ("The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest,'" quoting *Winter*, 555 U.S. at 20); *American Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits," citing *Winter*, 555 U.S. at 20); *Timbisha Shoshone Tribe v. Kennedy*, 687 F.Supp.2d 1171, 1182 (E.D. Cal. 2009) ("Pursuant to *Winter*, [p]laintiffs must make a clear showing that they are likely to succeed on the merits.").

---

[14]Proposed Order to Show Cause for a Preliminary Injunction With Temporary Restraining Order, Docket No. 16-6 (Aug. 14, 2015).

[15]Application at 4.

Prior to the Supreme Court's decision in *Winter*, the Ninth Circuit held that to prevail on a motion for preliminary injunction, a plaintiff had to demonstrate:

> "either: (1) a likelihood of success on the merits and the *possibility* of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in its favor.  These two alternatives represent extremes of a single continuum, rather than two separate tests.  Thus, the greater the relative hardship to the party seeking the preliminary injunction, the less probability of success must be shown." *Stormans, Inc.*, *586* F.3d at 1127 (quoting *Clear Channel Outdoor Inc. v. City of L.A.*, 340 F.3d 810, 813 (9th Cir. 2003) (emphasis original)).

The *Winter* Court "definitively refuted" the Ninth Circuit's "possibility of irreparable injury" standard.  *Id.*  It held that the "'possibility' standard [was] too lenient," and that "plaintiffs seeking preliminary relief [have] to demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis original).  Following *Winter*, the Ninth Circuit has held that "[t]o the extent that our cases have suggested a lesser standard, they are no longer controlling, or even viable." *American Trucking Associations*, 559 F.3d at 1052 (footnote omitted).

It has thus articulated an alternate formulation of the sliding scale test.  Post-*Winter*, serious questions going to the merits and a balance of hardships that tips sharply in favor of the plaintiff can support issuance of a preliminary injunction if plaintiff also shows that there is a likelihood of irreparable injury and the injunction is in the public interest. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) ("To the extent prior cases applying the 'serious questions' test have held that a preliminary injunction may issue where the plaintiff shows only that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor, without satisfying the other two prongs, they are superseded by *Winter*, which requires the plaintiff to make a showing on all four prongs. . . . But the 'serious questions' approach survives *Winter* when applied as part of the four-element *Winter* test.  That is, 'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest.").

Murtagh bears a particularly heavy burden in showing that injunctive relief is warranted because a portion of the injunction he seeks is mandatory in nature.  A mandatory injunction "'goes well beyond simply maintaining the status quo *pendente lite* [and] is particularly disfavored.'" *Stanley v. Univ. of S. California*, 13 F.3d 1313, 1320 (9th Cir. 1994) (quoting *Anderson v. United States,* 612 F.2d 1112, 1114 (9th Cir. 1979) (alteration original)).  "When a mandatory preliminary injunction is requested, the district court should deny such relief 'unless the facts and law clearly favor the moving party.'" *Id.* (citations omitted).  See also *Leigh v. Salazar*, 677 F.3d 892, 902 (9th Cir. 2012) (Wallace, J., concurring in part and dissenting in part) ("Preliminary injunctions normally serve to prevent irreparable harm by preserving the status quo pending a trial or other determination of the action on the merits.  Here, Leigh's request for preliminary injunctive relief 'goes well beyond simply

maintaining the status quo.' She asks the court to order the BLM to provide Leigh with all the access she demands immediately. Mandatory preliminary injunctions, such as Leigh seeks, are particularly disfavored and should be denied 'unless the facts and law clearly favor the moving party.' Here, there were no necessary facts.").

**B.      Whether Murtagh Has Demonstrated that He Is Entitled to Preliminary Injunctive Relief**

**1.      The Likelihood that Murtagh Will Succeed on the Merits**

The moving party must establish a likelihood of success on the merits of his claims before a court can grant a temporary restraining order. *Winter*, 555 U.S. at 20. As noted, in the Ninth Circuit, this threshold showing can be made by demonstrating that there are serious questions going to the merits of the claims. If the moving party is unable to establish this element, the request for a preliminary injunction must be denied and the court need not review whether the remaining requirements for a preliminary injunction are satisfied. See *Dudum v. City and County of San Francisco*, Case No. 10-00504-RS, 2010 WL 1532365, *11 (N.D. Cal. Apr. 16, 2010); *Jones v. Felker*, Case No. 08-006-FCD-EFB, 2010 WL 582131, *2 (E.D. Cal. Feb. 12, 2010).

Trademarks represent "a limited property right in a particular word, phrase, or symbol." *New Kids on the Block v. New American Publishing, Inc.*, 971 F.2d 302, 306 (9th Cir. 1992). Lanham Act "[i]nfringement claims are subject to a commercial use requirement." *Bosley Medical Institute, Inc. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005). Section 1114 states that any person who "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . ." can be held liable for such use. 15 U.S.C. § 1114(1)(a). In this case, Murtagh has failed to demonstrate that he is likely to succeed on the merits of his trademark infringement claim because he has not shown that defendants are using his name in connection with the sale, distribution or advertising of any goods or services.

The Ninth Circuit's decision in *Bosley* is instructive. There, defendant purchased the domain name www.bosleymedical.com, and began to use the website in 2001. *Bosley Medical Institute*, 403 F.3d at 675. His site summarized the findings of a 1996 investigation of the institute by the Los Angeles County District Attorney's Office, and allowed visitors to view the entire investigative report. It also contained other highly critical information concerning Bosley. *Id*. Defendant earned no revenue from the website and no goods or services were sold there. *Id*. In addition, there were no links to any of Bosley's competitors' websites. The site did link to another of defendant's sites – BosleyMedicalViolations.com. This site linked to a newsgroup titled alt.baldspot, which displayed advertisements for companies competing with Bosley. Bosleymedical.com also contained a link to the Public Citizen website. *Id*.

Concluding that Bosley had no § 1114(1) claim, the Ninth Circuit observed that "[t]he Supreme Court has made it clear that trademark infringement law prevents only unauthorized uses of a trademark in connection with a commercial transaction in which the trademark is being used to confuse potential consumers." *Id.* at 676 (citing *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924) ("A trade-mark only gives the right to prohibit the use of it so far as to protect the owner's good will against *the sale of another's product as his*" (emphasis added)); *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 205 (1942) (explaining that the main purpose of the Lanham Act is to prevent the use of identical or similar marks in a way that confuses the public about the actual source of goods and services)); see *Lang v. Ret. Living Publ'g Co., Inc.*, 949 F.2d 576, 582-83 (2d Cir. 1991) ("The Lanham Act seeks to prevent consumer confusion that enables a seller to pass off his goods as the goods of another. . . . [T]rademark infringement protects only against mistaken *purchasing decisions* and not against confusion generally" (emphasis added)).

The court also noted that as "a matter of First Amendment law, commercial speech may be regulated in ways that would be impermissible if the same regulation were applied to noncommercial expressions." *Bosley Medical Institute*, 403 F.3d at 677 (citing *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 623 (1995)). "The First Amendment may offer little protection for a competitor who labels its commercial good with a confusingly similar mark, but trademark rights do not entitle the owner to quash an unauthorized use of the mark by another who is communicating ideas or expressing points of view." *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 900 (9th Cir. 2002). After discussing the relevant background, the Ninth Circuit framed the issue as "whether [defendant]'s use of Bosley Medical as his domain name was 'in connection with a sale of goods or services.'  If it was not, then [defendant]'s use was 'noncommercial' and did not violate the Lanham Act." *Bosley*, 403 F.3d at 677.  The Ninth Circuit held that defendant "[wa]s not Bosley's competitor; he [wa]s [its] critic. His use of the Bosley mark [wa]s not in connection with a sale of goods or services – it [wa]s in connection with the expression of his opinion *about* Bosley's goods and services." *Id*. at 679.  Thus, the use was noncommercial and not the proper subject of a Lanham Act claim.  This was so despite the fact that defendant's website linked to other websites containing advertisements for Bosley's competitors, because defendant's site did not display such advertisements and offered nothing for sale. *Id*. at 677-78.

*Bosley* controls the disposition of this case.  Defendants are not Murtagh's competitors; Pardo is simply his critic, while the others defendants are domain registrars and registrants.  As in *Bosley*, there are no advertisements or other commercial links on the allegedly infringing website.  Thus, defendants' use of Murtagh's name is not in connection with the sale of any goods or services – it is "in connection with the expression of [Pardo's] opinion *about* [Murtagh's ]services." *Id*. at 679. Defendants' use of Murtagh's alleged mark is therefore noncommercial, and § 1114(1) provides no remedy for the purported infringement.  *Id*.  See also *Utah Lighthouse Ministry v. Found. for Apologetic Info. and Research*, 527 F.3d 1045, 1051-53 (10th Cir. 2008) ("Unless there is a competing good or service labeled or associated with the plaintiff's trademark, the concerns of the Lanham Act are not invoked."); *Accuride Int'l, Inc. v. Accuride Corp.*, 871 F.2d 1531, 1535 & n. 5 (9th Cir. 1989) (explaining that the "likelihood of confusion" analysis must remain focused "upon

confusion in the marketplace, as opposed to generalized public confusion," and that "[u]nless prospective purchasers of AII's goods are confused, there is . . . no cause of action").

In sum, because the evidence demonstrates that defendants have used Murtagh's name only in a noncommercial manner, Murtagh has not demonstrated a likelihood of success on the merits of his § 1114(1) claim.[16]  Because Murtagh has failed to show a likelihood of success on the merits, the court need not address the remaining factors.  See *Alliance for the Wild Rockies*, 632 F.3d at 1135 ("*Winter* . . . requires the plaintiff to make a showing on all four prongs").  Murtagh's application for a temporary restraining order is therefore denied.

### III.  CONCLUSION

For the reasons stated, Murtagh's application for a temporary restraining order is denied. Given the deficiencies in his showing, the court also declines to issue an order to show cause why a preliminary injunction should not issue.  See, e.g., *Digital Communications Network, Inc. v. AB Cellular Holding LLC*, No. 99-5418 CM (AJWx), 1999 WL 1044234, *2 (C.D. Cal. Aug. 19, 1999) (denying a party's application for both a temporary restraining order and an order to show cause re preliminary injunction); *Fowler v. United States*, 258 F.Supp. 638, 643 (C.D. Cal. 1966) (declining to issue either a temporary restraining order or an order to show cause re preliminary injunction because "plaintiff . . . made absolutely no showing of any facts that would warrant" such relief).

---

[16]Because Murtagh's application is based solely on § 1114(1), the court need not address whether his cyberpiracy or false designation of origin claims provide any basis for the relief he requests.